# The Funeral Directors' Association v. Bax.

(Decided June 17, 1913.)

## Appeal from Jefferson Circuit Court (Chancery Branch, First Division).

Association of Funeral Directors—Construction of Resolution Adopted By.—A resolution adopted by a voluntary association of funeral directors, providing that ''no member of the association use or

purchase an auto hearse, auto carriage, auto flower wagon or auto casket wagon for funeral purposes without first submitting same to be approved by the Association," did not deny to a member who had a contract for burying the pauper dead the right to use an auto vehicle in conveying their remains from the charitable institution in which they died to the places where their bodies were disposed of. It contemplated a funeral as the word funeral is generally understood, with interment in a cemetery or graveyard in the presence of the family or friends or acquaintances of the deceased.

BURNETT, BATSON & CARY for appellant.

LAWRENCE S. LEOPOLD, JOSEPH E. CONKLING for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The Funeral Directors' Association is composed of undertakers engaged in business in Jefferson County, Kentucky, and in Floyd and Clark Counties, Indiana, in which counties are situated the cities of Louisville, New Albany and Jeffersonville. The purpose of the Association, as expressed in the preface to its constitution and by-laws, is:

"The promotion of harmony in business, the cultivation of a more friendly spirit socially, to inculcate the principle of purity of character, temperate habits and a professional education and ability that shall be a standard by which Funeral Directors may practice the profession, to disseminate correct principles of business management, the best methods of protecting the interest of Funeral Directors in professional practice, as well as those of patrons, and to promote the welfare of all recognized, legitimate Funeral Directors."

The membership fee in the Association is $500, and it appears that with few exceptions all of the undertakers in the cities named, are members. One of the members of this Association is the appellee, L. D. Bax.

In 1910 the Association adopted the following resolution or by-law, "that no member of the Association use or purchase an auto hearse, auto carriage, auto flower wagon or auto casket wagon for funeral purposes without first submittting same to be approved by the Association," and at the time if its adoption the appellee, Bax, was a member of the Association, and if not present when the by-law was adopted, had notice of its adoption, and either approved or at least did not oppose it.

In the early part of 1912 charges were preferred in the Association against Bax for violating this resolution in purchasing and using in his business as an undertaker an auto wagon for funeral purposes. He was notified of the charge against him and requested to desist from using in his business for funeral purposes the vehicle objected to, but it appears that, insisting that he did not use the auto vehicle for funeral purposes, he declined to accede to the request of the Association, and thereupon he was suspended from membership. Soon after this he brought this suit against the Association and asked an injunction compelling it to set aside the order of suspension and to permit him to enjoy all the rights, benefits and privileges of a member of the Association.

After the pleadings had been made up and the evidence taken the chancellor who heard the case entered a judgment reciting that the resolution referred to applied only to auto vehicles which were used by its members for funeral purposes and that the auto vehicle of Bax was not used by him for funeral purposes within the meaning of the resolution, and it was "therefore considered and adjudged by the court that the defendant corporation, its officers and members, be and they are, and each of them is, hereby perpetually enjoined and restrained from in any manner interferring with the plaintiff in his use of said auto vehicle for the transportation of bodies for other than funeral purposes because of any claim that such use is prohibited by the said resolution hereinbefore quoted."

From this judgment the Association prosecutes this appeal asking a reversal upon the ground that the court had no jurisdiction to afford relief, as no pecuniary interest or property right was involved, and upon the further ground that the judgment entered was based upon an erroneous conception of the facts of the case.

The appellee, Bax, the only witness in his own behalf, testified in substance that the president and secretary of the Association had used for a long time automobiles in making what are denominated first calls on funeral occasions, and that the resolution in question, which was adopted by the Association, had never been enforced against these two members. He also testified that under some contract or arrangement with the city of Louisville he had charge of the burial of the pauper inmates of the charitable institutions of the city, and

that one of these institutions was located about fourteen miles from the city and the other four or five miles, and, having a great many calls to remove dead bodies from these places, he purchaser an auto vehicle for use in this class of work alone. That he had never used an auto vehicle of any kind in connection with the funeral of any person except the charity or pauper patients who died at these institutions. That the vehicle he used in this line of his business could not be fairly called a hearse but would rather come under the description of a wagon, which took the place of the wagon or vehicle he had formely used.

He further testified that he did not regard the transportation of the inmates of these institutions to the places of burial or to the medical hospitals where the bodies were sometimes disposed of, as being a funeral in the generally accepted meaning of the word or in the meaning of the word as used in the resolution.

He further testified that membership in the Association, aside from the property right growing out of the membership fee, was valuable in the dealings of the members with the National Casket Company, a large concern engaged in the business of furnishing coffins and undertakers' supplies. That this company had some kind of an arrangement with the Undertakers' Association by which it would not furnish expeditiously, or in the ordinary course of business, undertakers' supplies to undertakers who were not members of the Association, or, if it did furnish them, it would do so rather reluctantly and place in the way of the order as many little obstructions as it could do consistently with its ostensible purpose to treat all undertakers alike whether they belonged to the Association or not.

Pearson, the president of the Association, the only witness in its behalf, said in substance that the cost of of motor funeral vehicles was very high and that only a few members of the Association could afford to buy or use them in their business, and the resolution was adopted to prevent members who might be able to buy these high price vehicles from purchasing them and thereby injuring the business of other members of the Association who could not afford to purchase these expensive vehicles. He further said that he and perhaps one or two other members of the Association had regular passenger automobiles that they used in making what are termed first calls on funeral occasions, but that no

member, except Bax, had ever used one in the carriage of dead bodies or for any funeral purpose.

He also insisted that the use to which Bax was putting this motor vehicle was a funeral purpose within the meaning of the resolution and that the example of Bax would probably have the effect of inducing other members of the Association to purchase motor vehicles for use in funeral services, and thereby the entire purpose of the resolution would be frustrated.

He further said in speaking of the use to which appellee put the motor vehicle purchased by him in the transportation of dead bodies from the charitable institutions, that the main object of their removal from the institutions was to deliver them to some of the medical universities. That none of the bodies that he moved were hauled to any graveyard or buried or anything else. "There is no funeral connection with it whatever."

The chancellor, in granting to appellee the relief prayed for, expressed the opinion that the use to which appellee was putting the motor vehicle objected to by the Association was not a funeral purpose within the meaning of the resolution, and we are disposed to agree with this view of the matter. This conclusion makes it unnecessary to go into the question of the reasonableness of the resolution or the right of the Association to suspend or expel a member for disobedience of it.

While the removal of bodies of pauper patients from charitable institutions to a place of burial or to some medical school might, in a broad sense of the word, be termed a funeral, as it involves the disposition of dead bodies, we do not think the use of the words "funeral purposes" in the resolution contemplated funerals such as those in which Bax used this motor vehicle. Of course the burial of the poor, when the obsequies are attended by their families or friends or acquaintances, however few the number or humble the equipage, is as much a funeral as if the interment was attended with all the pomp and ceremony that accompanies the burial of the rich. But it seems obvious that in the adoption of this resolution the Association had in mind a funeral, whether of rich or poor, attended by the conditions usually incident to the burial of the deed, in a cemetery or graveyard, in the presence of the family or friends or acquaintances of the deceased, and not the disposal made

of the bodies of the unfortunate paupers who die in charitable institutions and are carried to some medical institution or pauper graveyard without the presence of family or friends.

The judgment is affirmed.